UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hood Packaging Corporation, | Case No.: _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Brian Steinwagner, | |
| Defendant. | |

Plaintiff Hood Packaging Corporation brings this Complaint against Defendant Brian Steinwagner for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of the duty of loyalty, conversion, tortious interference with business expectancy, deceptive trade practices, unjust enrichment, and injunctive relief, and states and alleges as follows:

## PARTIES

1.  Plaintiff Hood Packaging Corporation ("Hood Packaging") is a corporation organized under the laws of the State of Mississippi, with its principal place of business at 25 Woodgreen Place, Madison, MS 39110. Hood Packaging is a citizen of Mississippi as that term is used in Title 28, United States Code section 1332.

2.  Defendant Brian Steinwagner ("Steinwagner") is an individual who is a resident of and domiciled in Wisconsin, residing at 738 Regal Ridge Circle, Hudson, WI 54016. Upon information and belief, Steinwagner is a citizen of Wisconsin as that term is used in Title 28, United States Code section 1332.

## JURISDICTION AND VENUE

3.	Subject matter jurisdiction is proper pursuant to Title 28, United States Code section 1332, because this is a civil action where the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, between citizens of different states. Plaintiff Hood Packaging is a citizen of Mississippi. Defendant Steinwagner is a citizen of Wisconsin. More than $75,000 is at issue in this action.

4.	Venue is appropriate in this Court pursuant to Title 28, United States Code section 1391(a), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

**A.	Hood Packaging is a key player in the packaging industry and formerly employed Steinwagner**

5.	Hood Packaging is a leader in the design and manufacture of a wide range of packaging materials.

6.	Steinwagner was employed by Hood Packaging for approximately eleven years. Most recently, he was the General Manager of Hood Packaging's North Region, responsible for sales in excess of $65 million per year. He worked out of Hood Packaging's Arden Hills, Minnesota facility.

7.	Steinwagner resigned from Hood Packaging on June 5, 2014, stating that, "As of today 6-5-14 I would like to resign as General Manager of the Northern Region

Hood Packaging." He offered to stay at Hood Packaging for two weeks after he resigned. Hood Packaging declined Steinwagner's offer and treated the resignation as effective June 5, 2014.

**B.     Steinwagner was subject to a non-compete agreement with Hood Packaging and had access to the company's trade-secret information**

8.     As a General Manager for Hood Packaging, Steinwagner could hire and fire employees and various sign contracts on behalf of Hood Packaging. In addition, he had access to confidential, proprietary, and trade-secret information belonging to Hood Packaging.

9.     Steinwagner executed and was subject to a Confidentiality, Invention, Non-Compete and Non-Solicitation Agreement ("Agreement") with Hood Packaging. A copy of the October 28, 2009 Agreement is attached as Exhibit A and adopted by reference pursuant to Federal Rule of Civil Procedure 10(c).

10.     Pursuant to the Agreement, Steinwagner agreed, in part, to maintain the confidentiality of Hood Packaging's information:

> except to the extent that [Hood Packaging] may otherwise agree in writing, not to disclose at any time during the period of my employment or during the period in which I am providing service to [Hood Packaging], as the case may be, or thereafter any information or knowledge of a non-public, confidential or proprietary nature (including, without limitation, [Hood Packaging's] Intangible Property) relating to [Hood Packaging] or any person, firm or corporation with which [Hood Packaging] has or has had business relations or from which [Hood Packaging] has obtained or is obtaining any such non-public, confidential or proprietary information or knowledge for any other reason * * *.

(Ex. A at § 4.)

3

11.     Further, pursuant to the Agreement, Steinwagner agreed to a one-year non-competition agreement:

> that if I am employed by [Hood Packaging] as an employee I will not, during the term of my employment and, if I resign from my employment, for a period of one year thereafter, anywhere within the Territory:
>
> (a)   individually or in partnership or in conjunction with any person, firm, association, syndicate or corporation, as principal, employee, agent, shareholder * * *, guarantor, creditor or in any other manner whatsoever, carry on or engage in any business which:
>
>> (i)   as regards a business activity carried on by me or in which I am engaged during the term of my employment competes with any business which [Hood Packaging] then carries on or then actively proposes to carry on to my knowledge; and
>>
>> (ii)  as regards a business activity carried on by me or in which I am engaged at any time during the period of one year after my resignation from my employment as aforesaid competes with any business which [Hood Packaging] was carrying on the date of my resignation.
>
> For purposes of this section, "Territory" means at any time while I am an employee of [Hood Packaging] any areas of Canada and the United States of America in which [Hood Packaging] is then actively conducting its business and at any time thereafter for a period of one year any areas of Canada and the United States of America in which [Hood Packaging] was actively conducing its business at the date of my resignation.

(Ex. A at § 5.)

12.     Hood Packaging actively conducts its business throughout the United States and Canada.

13.     Pursuant to the Agreement, Steinwagner agreed, for a term of 12 months, not to "initiate contact with any employee of the Company or any affiliate or subsidiary

4

therefor for the purpose of inducing or attempting to induce such employee to leave his or her employment with the Company or such affiliate or subsidiary." (Ex. A at § 6.)

      14.    Pursuant to the Agreement, Steinwagner agreed:

> That a breach of any of the provisions of this Agreement would cause [Hood Packaging] to suffer loss for which it could not be adequately compensated by damages and that [Hood Packaging], in addition to any other remedy or relief, may enforce performance of this agreement by injunction or specific performance upon application to a court of competent jurisdiction without proof of actually damage to [Hood Packaging] and notwithstanding that damages may be readily quantifiable and furthermore that I will not plead sufficiency of damages as a defense in the proceeding for such injunctive relief brought by [Hood Packaging].

(Ex. A at § 8.)

      15.    The Agreement is to be governed by and construed in accordance with Minnesota law. (Ex. A at § 9.)

      16.    By virtue of Steinwagner's employment at Hood Packaging, he gained access to Hood's books and records, and the confidential, proprietary, and trade-secret information contained therein, including the identity of Hood's current, former, and potential customers and their names and addresses, contact personnel, purchasing history and outlook, and other financial information. Steinwagner knew, or had reason to know, that Hood Packaging intended or expected Steinwagner to maintain the secrecy of this information.

      17.    By virtue of Steinwagner's employment at Hood Packaging, he gained access to confidential, proprietary, and trade-secret information relating to Hood's costs, pricing, profit margins, manufacturing techniques and methods, business plans and objectives, and other highly sensitive competitive information. Steinwagner knew, or had

reason to know, that Hood Packaging intended or expected Steinwagner to maintain the secrecy of this information.

18.    Hood Packaging has expended considerable time and money developing its trade secrets. This trade-secret information is not known outside of Hood Packaging and cannot be easily or readily acquired by others outside of Hood Packaging.

19.    Hood Packaging closely guards and protects the confidentiality of its trade secrets, both inside and outside the company. Hood Packaging maintains and conducts training on a variety of corporate policies, including the Confidentiality, Invention, Non-Compete, and Non-Solicitation Agreement; conflicts of interest arising out of the use of corporate property, proprietary information or trade secrets; and employee conduct – including not disclosing trade secrets or confidential information.

20.    Steinwagner participated in training on Hood Packaging's corporate policies.

21.    The Agreement with Steinwagner helps maintain the secrecy of Hood Packaging's trade secrets by including confidentiality and non-compete clauses. These clauses also protect the goodwill that Hood Packaging has developed with its customers.

22.    The non-compete clause in the Agreement protects a legitimate business interest. Namely, it protects Hood Packaging from unfair competition by departing employees for a limited period of time.

23.    The one-year temporal restriction in the Agreement is reasonable.

24.    The geographic and scope restrictions in the Agreement are reasonable because they only preclude Steinwagner from direct competition against Hood Packaging

6

Hood Packaging in areas that Hood is actively conducting its business. These restrictions do not prohibit Steinwagner from other types of employment or from employment in areas where Hood is not actively conducting business.

**C.   Steinwagner sends highly confidential customer and prospect information to a competitor and starts competing with Hood Packaging during his employment.  He continues to  violate his non-compete restrictions after his employment ends**

25.    Steinwagner's employment with Hood Packaging ended effective June 5, 2014 when he resigned from the company.

26.    Shortly after Steinwagner's Hood Packaging employment ended, Hood learned that while he was employed, he sent highly confidential information to a competitor and was competing with Hood during his employment.  Hood then learned that Steinwagner continued to compete with Hood after he left.

27.    In particular, Steinwagner began talking to and conspiring with Morris Packaging, L.L.C. prior to May 27, 2014 to compete against Hood Packaging. Morris Packaging sells, among other things, flexible packaging materials.

28.    For example, on May 27, 2014, Steinwagner used a non-Hood Packaging email account to transmit to Jim Morris of Morris Packaging a plan to obtain various business from Hood Packaging and to compete against Hood Packaging. Steinwagner sent Morris a detailed list of Hood customers and prospects, including proprietary information regarding production and contract information.  Steinwagner tried to hide his wrongful and illegal conduct by using the email account "psteinwagner@hotmail.com" that lists "Penny Steinwagner" in the "From" field for emails sent from that account.

Upon information and belief, Steinwagner's wife's name is Penny. The email sign off was from "Brian." This plan was in competition with Hood Packaging and relied upon and disclosed Hood's confidential, proprietary, and trade-secret information.

29. Just prior to resigning from Hood, Steinwagner met with one or more Hood Packaging customer and upon information and belief, did so with the purpose of obtaining information to provide to Morris Packaging and to compete against Hood Packaging.

30. Steinwagner and Morris Packaging's conduct was and is in furtherance of a scheme to obtain and convert to their use and gain Hood Packaging's records, trade secrets, confidential information, and manufacturing information and techniques and the goodwill generated, directly and indirectly, by Steinwagner's association with Hood Packaging.

31. Steinwagner disclosed and provided Hood Packaging's confidential, proprietary, and trade-secret information to Morris Packaging for purposes of competing against Hood while he was still employed with Hood Packaging, in direct violation of his fiduciary and loyalty obligations to Hood Packaging and the terms of his Agreement.

32. On information and belief, Steinwagner has competed against Hood packaging in violation of his Agreement by visiting at least three Hood Packaging customers for purposes of competing against Hood packaging and bringing that business to Morris Packaging. This competition has caused or will cause irreparable damage to Hood Packaging's reputation and good will, as well as monetary damages.

33. Hood Packaging has been damaged by Steinwagner's wrongful actions.

34. The value of the trade secrets misappropriated by Steinwagner is in excess of $75,000.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

35. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

36. Steinwagner entered into a valid and enforceable contract (the Agreement) with Hood Packaging on or around October 28, 2009.

37. Hood Packaging performed all conditions precedent.

38. Pursuant to that Agreement, Steinwagner had an obligation to refrain from using for himself or others any of Hood Packaging's trade secrets, confidential information, or other proprietary data.

39. Steinwagner breached his contractual obligations by using for himself or others – including Morris Packaging – Hood Packaging's trade secrets, confidential information, and other proprietary data.

40. Pursuant to that Agreement, Steinwagner agreed not to compete against Hood Packaging for a period of one year in areas where Hood Packaging was actively conducting business during Steinwagner's employment.

41. Steinwagner breached his contractual obligations by competing against Hood Packaging in direct contravention of his Agreement.

42. Hood Packaging has suffered damages as a direct result of Steinwagner's breach of his contractual obligations.

43. In addition, as a consequence of the foregoing, Hood Packaging will continue to suffer substantial damages and financial loss including but not limited to the loss of customers and customer good will as a result of Defendant's breaches.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

44. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

45. The confidential information of Hood Packaging to which Steinwagner has gained access, as described above, constitutes trade secrets within the meaning of the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01-08.

46. Hood Packaging's confidential customer and internal operational information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

47. Hood Packaging has made reasonable efforts to maintain the secrecy of such confidential customer and internal operational information.

48. Steinwagner knew, or had reason to know, that he acquired Hood Packaging's trade secrets under circumstances giving rise to a duty for him to maintain the secrecy and limit the use of those trade secrets.

49. Steinwagner did not have Hood Packaging's express or implied consent to disclose or use Hood Packaging's trade secrets.

50. On information and belief, Steinwagner disclosed and used, and is continuing to disclose and use, Hood Packaging's trade secrets to sell to or solicit customers and prospect customers of Hood Packaging.

51. Steinwagner's actions constitute misappropriation of Hood Packaging's trade secrets.

52. Steinwagner's conduct in misappropriating Hood Packaging's trade secrets by improperly acquiring, using, and disclosing such trade secrets in breach of a duty to maintain the secrecy of such trade secrets was willful and malicious.

53. As a result of Steinwagner's misappropriation of Hood Packaging's trade secrets, Hood Packaging has suffered damages.

54. Steinwagner's misappropriation of Hood Packaging's trade secrets also entitles Hood Packaging to injunctive relief as provided by Minn. Stat. § 325C.02, to exemplary damages pursuant to Minn. Stat. § 325C.03, and to attorney fees pursuant to Minn. Stat. § 325C.04.

## THIRD CAUSE OF ACTION

### (Breach Of Fiduciary Duty)

55. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

56. Hood Packaging employed Steinwagner until he abruptly resigned on June 5, 3013. Steinwagner was a key employee as the General Manager of Hood Packaging's North Region, responsible for sales in excess of $65 million a year.

57. During Steinwagner's employment at Hood Packaging, Steinwagner collected and had access to documents containing confidential information and trade secrets pertaining to Hood Packaging's business practices, research, business operation, financial matters, customers, and prospective customers.

58. Steinwagner signed the Agreement in which he acknowledged that he would not disclose non-public, confidential, or proprietary information or knowledge relating to Hood Packaging and any person, firm, or corporation that Hood Packaging has or had business relations with.

59. In the Agreement, Steinwagner agreed to not compete with Hood Packaging during his term of employment and for one year after his resignation anywhere that Hood Packaging was actively conducting business as of the date of his resignation.

60. Steinwagner agreed not to initiate contact with any employee of Hood Packaging, or any affiliate or subsidy, for the purpose of inducing or attempting to induce the employees to leave Hood Packaging for one year following the end of his employment with Hood Packaging.

61. Steinwagner was trained on and aware of Hood Packaging policies related to protecting trade secrets and confidential information.

62. Steinwagner knew and agreed that the information relating to Hood Packaging's business practices, research, business operations, financial matters, and customers was confidential and that he had a duty to maintain its confidentiality.

63. Despite his fiduciary obligations to Hood Packaging to maintain Hood Packaging's trade secrets as confidential, Steinwagner nevertheless sent Hood Packaging

trade secrets to Morris Packaging, a competing company, and conspired with Morris Packaging to use that information to solicit customers and prospective customers of Hood Packaging.

64. Steinwagner has violated his common law fiduciary duty in that, while employed by Hood Packaging, Steinwagner secretly planned to leave the employ of Hood Packaging and schemed to deprive Hood Packaging of its customers, trade secrets, and employees, removed Hood Packaging confidential materials, and then utilized Hood Packaging's confidential information and other resources to solicit or prepare to solicit Hood Packaging's customers and prospective customers.

65. Steinwagner's actions constitute an unlawful breach of his fiduciary duty to Hood Packaging.

66. As a result of Steinwagner's breach of his fiduciary duty to Hood Packaging, Hood Packaging has suffered damages.

**FOURTH CAUSE OF ACTION**

**(Breach Of Duty Of Loyalty)**

67. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

68. As an employee of Hood Packaging, Steinwagner owed Hood Packaging a duty of loyalty. This duty included, among other things, a duty to refrain from competing with Hood Packaging while he was employed by Hood Packaging, from disclosing information that Hood Packaging considered and protected as confidential and trade secret, and from soliciting Hood Packaging's customers.

69. Steinwagner breached his duty of loyalty to Hood Packaging when he misappropriated Hood Packaging's confidential, proprietary, and trade-secret information, including customer and prospective information, including the names of those customers and prospective customers and the values associated with those accounts, and disclosed that information to Morris Packaging prior to his resignation from Hood Packaging and taking Hood Packaging's information with him when he resigned.

70. As a result of Steinwagner's breach of his duty of loyalty to Hood Packaging, Hood Packaging has suffered damages.

## FIFTH CAUSE OF ACTION

### (Tortious Interference with Business Expectancy)

71. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

72. Hood Packaging has business expectancies with its customers and prospective customers in the areas where it is actively conducting business.

73. Hood Packaging profits from these business expectancies by selling packaging and other services to these companies.

74. Steinwagner knew of the business expectancies between Hood Packaging and its customers and prospective customers.

75. Steinwagner intentionally interfered with these business expectancies by soliciting and causing a breach or termination of the business expectancies from Hood Packaging's customers and prospective customers.

76. Steinwagner was not justified or privileged in interfering with the business expectancies between Hood Packaging and its customers and prospective customers.

77. Steinwagner's intentional interference with the business expectancies between Hood Packaging's customers and prospective customers caused damage to Hood Packaging.

## SIXTH CAUSE OF ACTION

### (Conversion)

78. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

79. Steinwagner intentionally, wrongfully, and without Hood Packaging's authorization, removed Hood Packaging's property from its Arden Hills, Minnesota office, including but not limited to Hood Packaging's customer information, and confidential and proprietary information.

80. Steinwagner converted this property for his own use in violation of Hood Packaging's property rights.

81. Steinwagner converted this property for use on Morris Packaging's behalf and to Hood Packaging's detriment, in violation of Hood Packaging's property rights.

82. As a result of said conversion, Hood Packaging has suffered damages over $75,000, such amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

## (Uniform Deceptive Trade Practices Act)

83. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

84. Steinwagner willfully caused the likelihood of confusion or of misunderstanding as to affiliation, connection, or association with Hood Packaging by soliciting Hood Packaging's customers and prospective customers for a competitor company while still employed at Hood Packaging pursuant to Minn. Stat. § 325D.44, subd. 1.

85. Steinwagner knew his actions were deceptive.

86. Steinwagner's deceptive trade practices caused injury to Hood Packaging.

## EIGHTH CAUSE OF ACTION

## (Unjust Enrichment)

87. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

88. Steinwagner solicited Hood Packaging's customers and prospective customers for Morris Packaging during his employment with Hood Packaging and, after his resignation, using Hood Packaging's confidential, proprietary, and trade secret information.

89. Steinwagner has received a benefit from Hood Packaging based on his conduct and under circumstances that make it inequitable for him to retain the benefit without paying for it.

90. Steinwagner's retention of the benefit without paying for it constitutes unjust enrichment.

## TENTH CAUSE OF ACTION

### (Permanent Injunction)

91. Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

92. Hood Packaging will be irreparably harmed should Steinwagner continue to breach the Agreement. Hood Packaging will be further irreparably harmed should Steinwagner continue to misappropriate Hood Packaging's trade secrets.

93. The remedy of damages is not fully adequate in this action.

94. Steinwagner should be permanently enjoined from breaching the Agreement, misappropriating Hood Packaging's trade secrets, and otherwise violating the terms of his Contract of Employment.

**WHEREFORE**, Plaintiff prays for recovery from Defendant Brian Steinwagner as follows:

1. That a Temporary Restraining Order and/or Preliminary Injunction Order issue immediately on Steinwagner, restraining him from, directly or indirectly, alone or in concert with others:

    a. using, disclosing, or transmitting information including, all books, records, documents and information pertaining to Hood Packaging's business activities, including but not limited to customers, customers' accounts, prospective customer leads, and referrals therefrom, and the names

17

    addresses or other information related to said customers' accounts, prospects and referrals; and that all original documents, and copies thereof, be immediately returned to Hood Packaging;

  b. competing against Hood Packaging;

  c. violating his Agreement; and

  d. any and all other such acts as this Court deems appropriate for injunctive relief;

  2. That the Court order Steinwagner to return to Hood Packaging, by no later than 3:00 p.m. on July 30, 2014, any and all information, materials, documents, files, or data, in whatever form, and any copies (including electronic files stored on any portable electronic storage medium, including, but not limited to, thumb drives, portable hard drives, DVDs, CDs, or any other electronic storage device) thereof, containing, reflecting, or referring to any of Hood Packaging's confidential, proprietary, or trade-secret data or information, all bit by bit forensic copies or images of the data, however and whenever made, including but not limited to, all such forensic images stored in any formats;

  3. That the Court order Steinwagner to provide to Hood Packaging, by no later than 3:00 p.m. on July 30, 2014, a detailed list of all individuals and entities to whom Steinwagner disclosed Hood Packaging's property, including but not limited to confidential, proprietary, or trade-secret data or information;

  4. The Court order immediate access to Steinwagner's home and work computers, tablets, mobile devices, and all email accounts used by Steinwagner to be

provided to and/or accessed by a computer forensic expert to make forensic copies and that those electronic devices not be used until forensic copies are made;

5. Judgment against Steinwagner on all counts;

6. Damages, including all damages allowed by law, punitive damages and attorneys' fees, in an amount to be determined at trial;

7. An Order enjoining Steinwagner from breaching his Agreement with Hood Packaging, including but not limited to covenants not to compete and nondisclosure provisions;

8. An Order enjoining Steinwagner from misappropriating Hood Packaging's trade secrets;

9. An Accounting of all of Steinwagner's non-Hood related business activities between January 1, 2012 and the date of trial in this matter; and

10. For such other relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all the issues so triable.

Dated:  July 22, 2014                    /s/ George H. Norris
                                         Mary M.L. O'Brien (#177404)
                                         John E. Radmer (#0386973)
                                         George H. Norris (#03391475)
                                         MEAGHER & GEER, P.L.L.P.
                                         33 South Sixth Street, Suite 4400
                                         Minneapolis, Minnesota 55402
                                         Tel:   612-338-0661

                                         *Attorneys for Plaintiff Hood Packaging, Corp.*