# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

HOOD PACKAGING CORPORATION,

        Plaintiff,

v.

BRIAN STEINWAGNER,

        Defendant.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 14-02979 (MJD/FLN)

Mary M.L. O'Brien, John E. Radmer and George H. Norris, Meagher & Geer, PLLP, Counsel for Plaintiff.

Timothy D. Kelly, Dykema Gossett, PLLC, Counsel for Defendant.

## I.    INTRODUCTION

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.  [Docket No. 13]  The Court heard oral argument on August 27, 2014.  Because of a likelihood that Plaintiff will prevail on its Breach of Contract and Breach of Duty of Loyalty claims, and irreparable harm to Plaintiff is inferred by this Court, the motion is granted, in part.

## II.    BACKGROUND

### A.     Factual Background

### 1.     The Parties

Plaintiff Hood Packaging Corporation ("Hood") is a corporation with its

principal place of business in Mississippi.  Hood designs and manufactures

flexible packaging materials, including snack and pet food bags.  Some of these

products are manufactured at a Hood facility in Arden Hills, Minnesota.

Defendant Brian Steinwagner ("Steinwagner") is a Wisconsin resident.

Steinwagner was a Hood employee for approximately eleven years.  Most

recently, he served as Hood's Northern Region General Manager for plastics

packaging.  Steinwagner worked from Hood's Arden Hills, Minnesota, facility.

Non-party Morris Packaging, LLC ("Morris Packaging"), is an Illinois-

based distributor and manufacturer of packaging material.  Steinwagner

currently serves as Vice President of Sales at Morris Packaging.

### 2.     Steinwagner's Employment In Packaging Industry

Steinwagner has worked in the flexible packaging materials industry since

1990.  Prior to joining Hood, he worked for two other flexible packaging

manufacturers, Flexo-Print and Anagram.  Hood hired Steinwagner as National

Sales Manager in 2004.

### 3.     Steinwagner Signs a Non-compete Agreement with Hood

In October of 2009, Hood General Manager Matt Hegstrom presented to Steinwagner a Confidentiality, Invention, Non-Compete and Non-Solicitation Agreement ("the Agreement").  The Agreement superseded a 2004 agreement. Initially, Steinwagner refused to sign it.  Steinwagner was concerned that the non-solicitation clause would place restrictions on his ability to do business with longstanding packaging customers that he brought to Hood from Flexo-Print and Anagram.  Hood Vice President of Human Resources, Karen McGlaughlin, approved the crossing-out of the non-solicitation provision.  Steinwagner signed the revised 2009 Agreement.

As modified, the Agreement retains confidentiality and non-competition clauses.  The confidentiality component obligated Steinwagner to not disclose "at any time during the period of [his] employment . . . or thereafter . . . information of a non-public, confidential or proprietary nature (including, without limitation, the Company's Intangible Property) relating to the Company."

The non-compete provision reads,

… I will not, during the term of my employment and, if I resign from my employment, for a period of one year thereafter, anywhere within the Territory: . . . engage in any business which:

3

(i)      . . . competes with any business which [Hood Packaging] then carries on or then actively proposes to carry on to my knowledge; and

(ii)     . . . as regards a business activity carried on by me or in which I am engaged at any time during the period of one year after my resignation from my employment as aforesaid competes with any business which [Hood Packaging] was carrying on the date of my resignation.

For the purposes of this section, "Territory" means at any time while I am an employee of the Company any areas of Canada and the United States of America in which the Company is then actively conducting its business and at any time thereafter for a period of one year any areas of Canada and the United States of America in which the Company was actively conducting its business at the date of my resignation;

### 4.      Hood's Relationship to Morris Packaging

Morris Packaging is both a Hood competitor and distributor.  To protect its business interests, Hood requires that Morris Packaging sign a Sales Agent Agreement.  The Sales Agent Agreement contains confidentiality and non-compete covenants.

Although Morris Packaging manufactures products that compete with Hood's, Morris Packaging also pairs Hood products with customers in need of packaging solutions.  For example, Morris Packaging supplied a pet food company named Diamond Pet with Hood packaging products manufactured from the Arden Hills, Minnesota, facility.  Steinwagner claims that, over time,

4

Hood proved incapable of producing the volume of packaging product required by Diamond Pet.  To remedy the shortfall, Morris Packaging purchased the equipment necessary to manufacture the unsupplied packaging for Diamond Pet in-house.  Steinwagner recalls that the Diamond Pet account caused strain in Hood's relationship with Morris Packaging.

### 5.     Steinwagner Searches for New Employment

By April of 2014, Steinwagner's relationship with Hood had begun to deteriorate.  He claims that work-related stress caused his mental and physical health to suffer.  Steinwagner's superior, Mark Drury ("Drury"), did not award a bonus to him, citing poor performance.  Steinwagner applied for a general manager position in an unrelated industry.

### 6.     Steinwagner's Email to Jim Morris

On May 27, 2014, while still employed by Hood, Steinwagner sent an email ("the email") to Jim Morris ("Morris"), of Morris Packaging.  Steinwagner sent the email from his wife's personal email account.  He explains that he used his wife's account because Hood's Internet server was down.  Hood disputes that claim with data that show the server was functioning properly.  Steinwagner later attempted to delete the email.

Hood discovered the email "a few weeks after" Steinwagner's June 5, 2014, termination from Hood.  The email contains a list of twenty companies and two independent sales representatives.  Alongside each company name, the email includes a combination of the company's buying needs, manufacturing information, and the "play" for how the company's business might be acquired.

> [REDACTED]:  This includes [REDACTED].  The play here is combine the packaging with ingredients.  They are very limited on space and I know they would be very interested in a local warehouse where they could pull everything from on a daily basis.  This could be a $[REDACTED]MM - $[REDACTED]MM a year piece of business.  It will require building a warehouse of at least 50,000 SQ FT.
>
> . . .
>
> [REDACTED]:  The MBE[1] is the plan here for packaging and ingredients.
> [REDACTED]:  The MBE play here as well.
>
> . . .
>
> [REDACTED]:  On run at Hood.  Just started year 2 of a 4 year contract.  All bags are run on [REDACTED] machine and then on the [REDACTED] machine.  Very slow process.  Could greatly improve profits it [sic] could get them to change to a [REDACTED] style pouch.

---

[1] Minority Business Enterprise.  Morris Packaging is an MBE, while Hood Packaging is not.  MBE status provides an advantage for securing a customer's business.

The email also contains names and information regarding two

independent sales representatives.

> [REDACTED]:  Jim [REDACTED] from [REDACTED].  Great guy
> who controls a lot of business.  Adding the Morris Holdings
> opportunities to his portfolio will be huge.  We just build his
> commission on top of our standard profit.
> . . .

The parties dispute the nature and content of the email.  Hood

characterizes the email as a detailed plan to move millions of dollars of business

from Hood to Morris Packaging.  Hood points to additional evidence suggesting

that, prior to resigning from Hood, Steinwagner met with various Hood

customers in order to provide competitive information to Morris Packaging.

Moreover, since filing its Motion, Hood has discovered a November 2013

Morris Packaging press release that intimates a plan to compete against Hood.

The document details a potential ownership stake in Morris Packaging for

Steinwagner, as well as "thievery of personnel" from Hood.

Steinwagner claims that his email to Jim Morris was written in order to

salvage the relationship between Hood and Morris Packaging.  He claims that

the email was sent in the best interests of Hood.  According to Steinwagner, the

goal of the email was to outline a restructured relationship wherein Morris

Packaging would manufacture some of the products that Hood was not able to manufacture.

Hood acknowledges discussions with Morris Packaging regarding converting—i.e. bag-making—services.  But Hood claims that many of the customers listed in the email did not have converting requirements.

Because Hood places its company logo on all of its packaging products, Steinwagner contends that the identity of Hood's customers is public knowledge.  Moreover, he claims to be unaware of any manufacturing techniques that are unique to Hood, while denying any knowledge of projected purchases, business plans and outlook of Hood's customers.

### 7.    Steinwagner Relates Frustration to Morris Packaging

On or about May 30, 2014, Steinwagner expressed work-related discontent to Morris during a telephone call.  On Sunday, June 1, Morris flew to Wisconsin in order to negotiate Steinwagner's employment with Morris Packaging.

On June 2, 2014, Steinwagner emailed Drury.  Steinwagner wrote that he was unable to get a response from Morris regarding an agreement that Drury had sent over to Morris.  Hood suggests that Steinwagner's failure to disclose the June 1 meeting with Morris demonstrates dishonesty towards Hood.

8

### 8.  Steinwagner Resigns from Hood

On June 5, 2014, Steinwagner submitted a letter to Drury, stating, "As of today 6-5-14, I would like to resign from Hood Packaging."  In his letter, Steinwagner offered to delay his resignation for two weeks.  Hood declined Steinwagner's offer to extend the date of his resignation.  Later that day, Hood notified Steinwagner that June 5, 2014 was the effective date of his termination.

### 9.  Morris Packaging Hires Steinwagner

Steinwagner resumed employment negotiations with Morris Packaging on June 5, 2014, the same day as his resignation from Hood.  Morris Packaging hired Steinwagner on June 9, 2014.

### 10.  Hood Reminds Steinwagner of the Agreement

Hood alleges that, after Steinwagner joined Morris Packaging, he contacted Hood customers for the purpose of competing against Hood.  On June 25, 2014, Hood sent a letter to Steinwagner.  The correspondence noted that, as a Hood employee, he had "access to highly confidential information about the company and its customers."  The letter reminded Steinwagner of his obligations under the Agreement.  Hood emailed a copy of the letter to Steinwagner on July 2, 2014.  There is no dispute that Steinwagner viewed the letter.

**B.     Procedural Posture**

Plaintiff filed a Complaint against Steinwagner on July 22, 2014.  [Docket

No. 1]  The Complaint alleges:  Count 1: Breach of Contract; Count 2:

Misappropriation of Trade Secrets; Count 3: Breach of Fiduciary Duty; Count 4:

Breach of Duty of Loyalty; Count 5: Tortious Interference with Business

Expectancy; Count 6: Conversion; Count 7: Violation of the Uniform Deceptive

Trade Practices Act; and Count 8: Unjust Enrichment.  Plaintiff's Tenth Cause of

Action[2] seeks a permanent injunction barring Steinwagner from breaching the

non-compete and confidentiality provisions of his 2009 Agreement with Hood.

On August 5, 2014, Plaintiff filed the current motion for a Temporary

Restraining Order and Preliminary Injunction.  [Docket No. 13]

**III.    DISCUSSION**

**A.     <u>Dataphase</u> Analysis**

The Eighth Circuit Court of Appeals has established the standard for

considering preliminary injunctions.  <u>Dataphase Sys. Inc. v. C L Sys., Inc.</u>, 640

F.2d 109, 113 (8th Cir. 1981) (en banc).  This Court must consider (1) the threat of

irreparable harm to the moving party if an injunction is not granted, (2) the harm

suffered by the moving party if injunctive relief is denied as compared to the

---

[2] Plaintiff omitted a Ninth Cause of Action.

effect on the non-moving party if the relief is granted, (3) the public interest, and

(4) the probability that the moving party will succeed on the merits.  Id.

### 1.    Likelihood of Success on the Merits

In order to obtain injunctive relief, Plaintiff must show that it has a "fair

chance of prevailing" on its claims.  Planned Parenthood Minn., N.D., S.D. v.

Rounds, 530 F.3d 724, 732 (8th Cir. 2008).  "In considering the likelihood of the

movant prevailing on the merits, a court does not decide whether the movant

will ultimately win." PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th

Cir. 2007).

Plaintiff has asserted ten causes of action against Morris Packaging.  For

the purpose of advancing the current motion, Plaintiff argues a likelihood of

success on three claims:  Count 1: Breach of Contract, Count 2: Misappropriation

of Trade Secrets, and Count 4: Breach of Duty of Loyalty.

### a)    Breach of Contract

Plaintiff alleges that Steinwagner breached the 2009 Agreement by using

Hood's trade secrets, confidential information, or other proprietary data for his

own benefit and for the benefit of Morris Packaging while employed by Hood.

Moreover, Plaintiff claims that Steinwagner violated his contractual obligations

by competing against Hood within a period of one year from the termination of his employment.

Steinwagner argues that Plaintiff is not likely to succeed on the merit of its Breach of Contract claim because the Agreement was neither supported by independent consideration nor triggered by the termination of his employment. As for lack of consideration, Plaintiff responds that Steinwagner was promoted in the fall of 2009, days after he signed his new employment contract containing the non-compete clause.  Hood also claims that Steinwagner received a raise after signing the Agreement.  According to Hood, these actions constitute adequate consideration.

Regarding whether the 2009 Agreement was triggered upon Steinwagner's termination, the parties dispute whether his letter constituted an effective resignation or merely an offer to resign.  This determination is important because the language of the Agreement indicates that Steinwagner's non-compete covenant is enforceable only during the course of his employment or upon his resignation from Hood.

Steinwagner's June 6 resignation letter stated, "As of today 6-5-14 I would like to resign as General Manager of the Northern Region Hood Packaging."  The

Court finds that the purpose of the email was to resign from Hood.  Therefore, the email triggered the 2009 Agreement.  On the record now before it, the Court also finds that the Agreement was supported by independent consideration in the form of a promotion and subsequent raise.

Steinwagner's email to Jim Morris violated his covenant to refrain from competing against Hood while under its employ.  Moreover, while the names of Hood's customers may be public knowledge, information related to specific manufacturing equipment used by Hood, bids undertaken by Hood, and Hood's customer sales forecast data fall within the meaning of "confidential" as covenanted in the Agreement.  Plaintiff has satisfied its burden of showing a likelihood of success on its breach of contract claim.

**b)**     **Breach of Loyalty**

An employee owes a common law duty of loyalty to his employer.  Rehab. Specialists, Inc. v. Koering, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987).  "An employee's duty of loyalty prohibits [him] from soliciting the employer's customers for [himself], or from otherwise competing with [his] employer, while [he] is employed."  Id., (citing Sanitary Farm Dairies, Inc. v. Wolf, 112 N.W.2d 42 (Minn. 1961).).

Plaintiff argues that Steinwagner's email to Morris constituted a violation of his duty of loyalty to Hood.  Furthermore, Plaintiff claims that, prior to his resignation, Steinwagner met with at least one of the companies on the email list with the intent to solicit competitive information against Hood for the benefit of Morris Packaging.  To support this assertion, Plaintiff cites to a particular reference to a company in the email, wherein Steinwagner writes to Morris that he will "know more next week" about this particular company.

Steinwagner insists that Hood instructed him to rebuild a relationship with Morris Packaging.  He denies any breach of loyalty to Hood.  Instead, he claims that the entire fabric of the allegation is a distortion of the May 27 email.

The Court finds that Plaintiff is likely to succeed on the merits of its breach of duty of loyalty claim.  Steinwagner sent the May 27 email to Morris while still employed by Hood.  A reasonable fact-finder would likely conclude that the email was written so as to provide Morris Packaging with an opportunity to compete against Hood.  Plaintiff has satisfied its burden on this claim.

### c)    Trade-Secret Claim

The parties are in disagreement about whether customer lists can constitute trade secrets.  Given that Plaintiff is likely to succeed on the merits of

14

the Breach of Duty of Loyalty and Breach of Contract claims, this Court need not

determine whether the content of the email is so highly confidential that it rises

to "trade secret" status.

In sum, because Plaintiff has presented compelling evidence to show a

likelihood of success on its breach of contract and breach of duty loyalty claims,

this <u>Dataphase</u> factor weighs in favor of granting Plaintiff's motion.

### 2.      Threat of Irreparable Harm

Minnesota courts have held that "[i]rreparable harm may be inferred from

breach of a valid non-compete agreement if the former employee obtained a

personal hold on the good will of the former employer." <u>St. Jude Med. S.C., Inc.</u>

<u>v. Ord</u>, No. 09–738, 2009 WL 973275, at *5 (D. Minn. Apr. 10, 2009).  The

Minnesota Court of Appeals has inferred irreparable harm "from the breach of a

restrictive covenant in an employment contract." <u>Overholt Crop Ins. Serv. Co. v.</u>

<u>Bredeson</u>, 437 N.W.2d 698, 701 (Minn. Ct. App. 1989).  Furthermore, the

Minnesota Supreme Court has stated that a court may issue an injunction against

a party "who has, in violation of an explicit agreement or common law duty,

wrongfully used confidential information or trade secrets obtained from his

employer." <u>Cherne Indus., Inc. v. Grounds & Assoc.'s, Inc</u>., 278 N.W. 2d 81, 92

15

(Minn. 1979) (citation omitted).  The failure to show irreparable harm is "an

independently sufficient ground upon which to deny" injunctive relief.  Watkins,

Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

Steinwagner points to Plaintiff's delay in seeking injunctive relief as

evidence of the absence of a threat of irreparable harm.  He argues that "[t]he

failure to act sooner undercuts the sense of urgency that ordinarily accompanies

a motion for preliminary relief and suggests that there is, in fact, no irreparable

injury."  Aviva Sports, Inc. v. Fingerhut Direct Mktg., Civ. No. 09-1091, 2010 U.S.

Dist. LEXIS 128052, at *1 (May 25, 2010).  Steinwagner claims that nothing in the

record suggests that Hood was unable to move for injunctive relief sooner.

In its Reply, Plaintiff alleges that it only learned of Steinwagner's

duplicitous actions a few weeks after his resignation.  Hood explains that the

delay was due to attempted negotiation with Steinwagner, including the June 25,

2014, letter reminding him of his obligations under the 2009 Agreement.

The Court is satisfied that, in light of the May 27 email to Morris Packing,

injunctive relief is proper.  The email contained competitive information of both

a public and non-public nature.  At minimum, this email was  a violation of

Steinwagner's common law duty of loyalty to Hood, if not a violation of his non-

16

compete and confidentiality obligations under the Agreement.  Even assuming

*arguendo* that the email was in furtherance of a plan to rekindle a strained

relationship with Morris Packaging, the content of the email likely divulges more

than Hood would reasonably permit.  Given violations of a common law duty

and employment contract covenant, <u>Overholdt</u> and <u>Cherne</u> control here.  The

Court will infer a threat of irreparable harm should Steinwagner continue to

share Hood's confidential information, or compete with Hood customers in

violation of the Agreement.

On the record now before the Court, this factor weighs in favor of granting

Plaintiff's motion.

### 3.      Balance of the Harms

Plaintiff argues that Steinwagner will not be harmed if this Court issues

the requested order; Hood Packaging is merely seeking to enforce the 2009

Agreement.   Conversely, Steinwagner alleges that he and his family will suffer

great harm if injunctive relief is granted.  Plaintiff responds that Steinwagner can

find employment outside the scope of his non-compete.

On this factor, the Court finds Plaintiff's argument unpersuasive.

Steinwagner's non-compete subjects him far-reaching geographic restrictions.

Plaintiff underestimates the impact of a court order that enjoins Steinwagner

from continuing employment at Morris Packaging.

### 4.    The Public Interest

The Court finds that the public interest is best served by granting

Plaintiff's motion for injunctive relief.  When balanced against Hood's need to

protect its customer relationships and operating information, public policy

favors enforcement of the Agreement against Steinwagner.

In sum, the Court finds that the four <u>Dataphase</u> factors weigh in favor of

granting Plaintiff's motion.

### B.    Interpretation of Agreement Terms

Steinwagner argues that the 2009 Agreement must be read in its entirety.

Reading the non-compete terms with reference to the stricken non-solicitation

clause, he asserts that the two provisions cannot coexist.  Hood argues that the

stricken non-solicitation language is extrinsic evidence that should not be

considered when interpreting the unambiguous Agreement.

The Court need not resolve this question because Plaintiff's motion

succeeds without regard to either contract interpretation argument.

### C.    Scope of the Non-Compete

Non-compete agreements, though disfavored under Minnesota law, are enforceable if they serve a legitimate interest and are no broader than necessary to serve that interest.  Kallok v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn. 1998).  Unnecessarily broad restrictions are generally held to be invalid.  Bennett v. Storz Broad. Co., 134 N.W.2d 892, 899 (Minn. 1965).  This Court has discretion "to modify unreasonable restrictions on competition in employment agreements by enforcing them to the extent reasonable."  Hilligoss v. Cargill, Inc., 649 N.W.2d 142, 147 n. 8 (Minn. 2002).

The 2009 Agreement precludes Steinwagner from engaging in any competitive business within a particular territory while employed by Hood and for one year following his resignation.  While Steinwagner is employed by Hood, the Agreement defines "Territory" as "any areas of Canada and the United States of America in which the Company is then actively conducting its business."  For a year following the date of Steinwagner's resignation, the Agreement defines "Territory" as "any areas of Canada and the United States of America in which the Company was actively conducting its business."  At oral argument, Plaintiff's Counsel further clarified the meaning of "Territory."  Counsel explained that "Territory" means where the customers are located, operate, and produce.

19

Because the Court finds that this geographic limitation as written in the Agreement is broader than necessary, this Court grants Plaintiff's motion only insofar as it bars Steinwagner from competing against Hood on any of Steinwagner's former accounts at Hood, or the accounts then held by Hood on the date of Steinwagner's resignation.  The Court is satisfied that this restriction comports with the meaning of "Territory" as explained by Plaintiff's Counsel.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.  Hood Packaging Corporation's Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 13] is **GRANTED in part** and **DENIED in part**;

2.  Steinwagner may continue to work for Morris Packaging provided that he does not compete against Hood with respect to any of Steinwagner's former accounts at Hood, or the accounts held by Hood on the date of Steinwagner's resignation;

3.  Steinwagner is enjoined from communicating, disclosing, divulging or furnishing any of Hood Packaging Corporation's non-public, confidential information, including information related to specific manufacturing equipment

used by Hood, bids undertaken by Hood, Hood's customer sales forecast data,

and intangible property, to any person, firm, corporation, association, or other

entity for any reason or purpose whatsoever;

4.  Steinwagner shall return any of Hood Packaging's confidential or

proprietary information in his possession and control, including, but not limited

to, electronic documents and files; and

5. Steinwagner shall preserve all documents, data and information related

to Hood Packaging, including but not limited to electronic documents, electronic

mail, and corporate documents.

6.  This Order is effective upon the date recited below and shall remain in

effect until the earlier of June 5, 2015, or further order of this Court.  The Court

will not require security under Rule 65 of the Federal Rules of Civil Procedure

because Steinwagner is not ordered to end his employment at Morris Packaging.


Dated:   September 9, 2014          s/ Michael J. Davis
                                   Michael J. Davis
                                   Chief Judge
                                   United States District Court

21