## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Hood Packaging Corporation, | Case No.:  14-cv-02979-MJD-FLN |
| Plaintiff, | |
| vs. | **AMENDED COMPLAINT** |
| Brian Steinwagner,<br>Morris Packaging, L.L.C., and<br>Morris Converting, LLC, | |
| Defendants. | |

Plaintiff Hood Packaging Corporation brings this Amended Complaint against Defendants Brian Steinwagner, Morris Packaging, L.L.C., and Morris Converting, LLC for breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of the duty of loyalty, conversion, tortious interference with business expectancy, deceptive trade practices, unjust enrichment, tortious interference with contract, unfair competition, civil conspiracy, and injunctive relief, and states and alleges as follows:

## PARTIES

1.     Plaintiff Hood Packaging Corporation ("Hood Packaging") is a corporation organized under the laws of the State of Mississippi, with its principal place of business at 25 Woodgreen Place, Madison, MS 39110. Hood Packaging is a citizen of Mississippi as that term is used in Title 28, United States Code section 1332.

2.      Defendant Brian Steinwagner ("Steinwagner") is an individual who is a resident of and domiciled in Wisconsin, residing at 738 Regal Ridge Circle, Hudson, WI 54016.  Upon information and belief, Steinwagner is a citizen of Wisconsin as that term is used in Title 28, United States Code section 1332.

3.      Defendant Morris Packaging, L.L.C. ("Morris Packaging") is a limited liability corporation organized under the laws of the State of Illinois, with its principal place of business at 211 North Williamsburg Drive, Bloomington, IL 61704. Morris Packaging is a citizen of Illinois as that term is used in Title 28, United States Code section 1332.

4.      Defendant Morris Converting, LLC ("Morris Converting") is a limited liability corporation organized under the laws of the State of Missouri, with its principal place of business at 607 Missouri Boulevard Court, Jefferson City, MO 65109-1769. Morris Converting is a citizen of Missouri as that term is used in Title 28, United States Code section 1332.

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is proper pursuant to Title 28, United States Code section 1332, because this is a civil action where the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs, between citizens of different states.  Plaintiff Hood Packaging is a citizen of Mississippi. Defendant Steinwagner is a citizen of Wisconsin. Defendant Morris Packaging is a citizen of Illinois. Defendant Morris Converting is a citizen of Missouri. No members of

Morris Packaging or Morris Converting are citizens of Mississippi. More than $75,000 is at issue in this action.

6.      Venue is appropriate in this Court pursuant to Title 28, United States Code section 1391(a), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

**A.      Hood Packaging is a key player in the packaging industry and formerly employed Steinwagner**

7.      Hood Packaging is a leader in the design and manufacture of a wide range of packaging materials.

8.      Steinwagner was employed by Hood Packaging for approximately eleven years. Most recently, he was the General Manager of Hood Packaging's North Region, responsible for sales in excess of $65 million per year. He worked out of Hood Packaging's Arden Hills, Minnesota facility.

9.      Steinwagner resigned from Hood Packaging on June 5, 2014, stating that, "As of today 6-5-14 I would like to resign as General Manager of the Northern Region Hood Packaging."  He offered to stay at Hood Packaging for two weeks after he resigned. Hood Packaging declined Steinwagner's offer and treated the resignation as effective June 5, 2014.

10.      Upon information and belief, Steinwagner started working as an employee at Morris Packaging on June 9, 2014.

**B.**    **Steinwagner was subject to a non-compete agreement with Hood Packaging and had access to the company's trade-secret information**

11.    As a General Manager for Hood Packaging, Steinwagner could hire and fire employees and sign various contracts on behalf of Hood Packaging. In addition, he had access to confidential, proprietary, and trade-secret information belonging to Hood Packaging.

12.    Steinwagner executed and was subject to a Confidentiality, Invention, Non-Compete and Non-Solicitation Agreement ("Confidentiality/Non-Compete Agreement") with Hood Packaging. A copy of the October 28, 2009 Confidentiality/Non-Compete Agreement is attached as Exhibit A and adopted by reference pursuant to Federal Rule of Civil Procedure 10(c).

13.    Pursuant to the Non-Compete Agreement, Steinwagner agreed, in part, to maintain the confidentiality of Hood Packaging's information:

> except to the extent that [Hood Packaging] may otherwise agree in writing, not to disclose at any time during the period of my employment or during the period in which I am providing service to [Hood Packaging], as the case may be, or thereafter any information or knowledge of a non-public, confidential or proprietary nature (including, without limitation, [Hood Packaging's] Intangible Property) relating to [Hood Packaging] or any person, firm or corporation with which [Hood Packaging] has or has had business relations or from which [Hood Packaging] has obtained or is obtaining any such non-public, confidential or proprietary information or knowledge for any other reason * * *.

(Ex. A at § 4.)

14.    Further, pursuant to the Non-Compete Agreement, Steinwagner agreed to a one-year non-competition agreement:

that if I am employed by [Hood Packaging] as an employee I will not, during the term of my employment and, if I resign from my employment, for a period of one year thereafter, anywhere within the Territory:

(a)    individually or in partnership or in conjunction with any person, firm, association, syndicate or corporation, as principal, employee, agent, shareholder * * *, guarantor, creditor or in any other manner whatsoever, carry on or engage in any business which:

    (i)    as regards a business activity carried on by me or in which I am engaged during the term of my employment competes with any business which [Hood Packaging] then carries on or then actively proposes to carry on to my knowledge; and

    (ii)    as regards a business activity carried on by me or in which I am engaged at any time during the period of one year after my resignation from my employment as aforesaid competes with any business which [Hood Packaging] was carrying on the date of my resignation.

For purposes of this section, "Territory" means at any time while I am an employee of [Hood Packaging] any areas of Canada and the United States of America in which [Hood Packaging] is then actively conducting its business and at any time thereafter for a period of one year any areas of Canada and the United States of America in which [Hood Packaging] was actively conducing its business at the date of my resignation.

(Ex. A at § 5.)

15.    Hood Packaging actively conducts its business throughout the United States and Canada.

16.    Pursuant to the Non-Compete Agreement, Steinwagner agreed, for a term of 12 months, not to "initiate contact with any employee of the Company or any affiliate or subsidiary therefor for the purpose of inducing or attempting to induce such employee to leave his or her employment with the Company or such affiliate or subsidiary." (Ex. A at § 6.)

17.     Pursuant to the Non-Compete Agreement, Steinwagner agreed:

That a breach of any of the provisions of this Agreement would cause [Hood Packaging]  to suffer loss for which it could not be adequately compensated by damages and that [Hood Packaging], in addition to any other remedy or relief, may enforce performance of this agreement by injunction or specific performance upon application to a court of competent jurisdiction without proof of actually damage to [Hood Packaging] and notwithstanding that damages may be readily quantifiable and furthermore that I will not plead sufficiency of damages as a defense in the proceeding for such injunctive relief brought by [Hood Packaging].

(Ex. A at § 8.)

18.     The Non-Compete Agreement is to be governed by and construed in accordance with Minnesota law. (Ex. A at § 9.)

19.     By virtue of Steinwagner's employment at Hood Packaging, he gained access to Hood's books and records, and the confidential, proprietary, and trade-secret information contained therein, including the identity of Hood's current, former, and potential customers and their names and addresses, contact personnel, purchasing history and outlook, and other financial information. Steinwagner knew, or had reason to know, that Hood Packaging intended or expected Steinwagner to maintain the secrecy of this information.

20.     By virtue of Steinwagner's employment at Hood Packaging, he gained access to confidential, proprietary, and trade-secret information relating to Hood's costs, pricing, profit margins, manufacturing techniques and methods, business plans and objectives, and other highly sensitive competitive information.  Steinwagner knew, or had reason to know, that Hood Packaging intended or expected Steinwagner to maintain the secrecy of this information.

6

21.    Hood Packaging has expended considerable time and money developing its trade secrets. This trade-secret information is not known outside of Hood Packaging and cannot be easily or readily acquired by others outside of Hood Packaging.

22.    Hood Packaging closely guards and protects the confidentiality of its trade secrets, both inside and outside the company. Hood Packaging maintains and conducts training on a variety of corporate policies, including the Confidentiality, Invention, Non-Compete, and Non-Solicitation Agreement; conflicts of interest arising out of the use of corporate property, proprietary information or trade secrets; and employee conduct – including not disclosing trade secrets or confidential information.

23.    Steinwagner participated in training on Hood Packaging's corporate policies.

24.    The Non-Compete Agreement with Steinwagner helps maintain the secrecy of Hood Packaging's trade secrets by including confidentiality and non-compete clauses. These clauses also protect the goodwill that Hood Packaging has developed with its customers.

25.    The non-compete clause in the Non-Compete Agreement protects a legitimate business interest. Namely, it protects Hood Packaging from unfair competition by departing employees for a limited period of time.

26.    The one-year temporal restriction in the Non-Compete Agreement is reasonable.

27.    The geographic and scope restrictions in the Non-Compete Agreement are reasonable because they only preclude Steinwagner from direct competition against Hood

Packaging Hood Packaging in areas that Hood is actively conducting its business. These restrictions do not prohibit Steinwagner from other types of employment or from employment in areas where Hood is not actively conducting business.

## C.    Hood Packaging entered into a Sales Agent Agreement with Morris Packaging

28.    Hood Packaging and Morris Packaging entered into a Sales Agent Agreement ("Agency Agreement") effective December 9, 2004. A copy of the Agency Agreement is attached as Exhibit B and adopted by reference pursuant to Federal Rule of Civil Procedure 10(c).

29.    Pursuant to the Agency Agreement, Morris Packaging agreed to use its best efforts to pursue business and orders for the sale of Hood Packaging's products and to represent the interests of Hood Packaging:

> [Hood Packaging] hereby appoints Morris Packaging its Sales Agent to pursue orders for the sale of [Hood Packaging]'s Products. . . . [Morris Packaging] hereby accepts such appointment and agrees to use its best efforts to pursue business and orders from customers in the assigned Territory and to otherwise represent the interest of [Hood Packaging] in the Territory in accordance with the terms and provisions of this Agreement.

(Ex. B at ¶ 1.)

30.    Further, pursuant to the Agency Agreement, Morris Packaging agreed not to pursue orders for products that are competitive to the products offered by Hood Packaging without prior written consent or maintain an ownership interest in a competing company:

> During the term hereof, [Morris Packaging] shall not, without prior written consent from [Hood Packaging], pursue orders for products which are competitive to the products offered by [Hood Packaging], and shall not maintain an ownership

interest, either directly or indirectly, in any enterprise which manufactures or markets products which are competitive to the products offered by [Hood Packaging].

(Ex. B at ¶ 12.)

31.    Morris Packaging also agreed not to divulge any of Hood Packaging's confidential information or to make use of such information in a competitive enterprise during or after the term of the Agency Agreement:

> Both during and after the term hereof, [Morris Packaging] shall not divulge to any third party, or make use of in a competitive enterprise, any information confidential to [Hood Packaging], including, but not limited to, product information, pricing, technology and specifications.

(Ex. B at ¶ 12.)

32.    The Agency Agreement also included an additional term granting Morris Packaging exclusive rights to sell Hood Packaging products to an attached list of accounts unless the accounts are active national accounts supplied currently by Hood Packaging or an account with a presence of Hood Packaging:

> Morris Packaging to have exclusive rights to all accounts listed as Exhibit "B" titled Morris Packaging, Pride Packaging and Roar Packaging unless such accounts are active national accounts supplied currently by Hood Packaging Corporation or any Accounts with a presence of Hood Packaging Corporation.

(Ex. B at p. 7.)

33.    The Agency Agreement went into effect on December 9, 2004 and continued indefinitely, unless terminated by either party with ninety days written notice.

(Ex. B at ¶¶ 2, 10.)

34.    The Agency Agreement was signed by Jim Morris as President of Morris Packaging on December 19, 2004 and by Hood Packaging's Director of Sales and Marketing on December 28, 2004. (Ex. B at p. 5.)

**D.    Morris Packaging starts a competing converting operation – Morris Converting – and plans to take Hood Packaging customers and personnel.**

35.    Morris Packaging sells, among other things, flexible packaging materials. As far back as February 2013, Morris Packaging started developing a business plan for a converting operation to produce custom flexible packaging.

36.    At least one set of Morris Packaging presentation materials discussed the "Thievery of Personnel" from Hood Packaging.  Morris  Packaging's business plan included Brian Steinwagner as a potential owner of the new company.

37.    The new company, Morris Converting, was incorporated in Missouri on July 12, 2013 and established operations in Jefferson City, Missouri.  The operations of Morris Converting are in competition with Hood Packaging.

38.    On information and belief, the converting machines were online and Morris Converting was ready to start training employees by January 2014.

**E.    Steinwagner sends highly confidential customer and prospect information to Morris Packaging and starts competing with Hood Packaging during his employment.  He continues to violate his non-compete restrictions after his employment ends**

39.    Steinwagner began actively looking for employment outside of Hood Packaging as early as March 2014.

40.    By May 13, 2014, Steinwagner and Jim Morris (President of Morris Packaging) were in detailed discussions about the employment package for Steinwagner

10

to work for Morris Packaging, including the structure of his commissions, a two-year commitment on his base salary, a guaranteed college scholarship for Steinwagner's son, and a new vehicle. These discussions were outlined in a May 13, 2014 email from Jim Morris to Steinwagner.

41.    In the same May 13, 2014 email, Jim Morris asked Steinwagner to "[g]et the targets outlined on the QT if you can . . . . I would like us to outline a pretty extensive list of targets and do a dossier on what you/we can." Morris then discussed the products to pitch to targets "i.e. Quad bag, bottom seal, Roll Stock, WPP, Paper Bags, Bulk Bags, etc." On information and belief, many of those products are planned to be or are actively produced by Morris Converting or an affiliated company.

42.    In the May 13, 2014 email, Jim Morris also mentioned discussing with an attorney "options for hiring [Steinwagner] under one of the other companies, in order to create a little distraction to [Hood Packaging]." Jim Morris then discussed a plan to fly Steinwagner down to Jefferson City on May 22, 2014.

43.    On May 19, 2014, Steinwagner emailed Jim Morris to discuss the timing of his resignation from Hood Packaging. Steinwagner noted his contacts with current Hood Packaging customers the following next week, and an upcoming trips for Hood Packaging to two potential customers on June 2 and 3, 2014. Steinwagner also planned to stop by a current Hood Packaging customer on June 4, 2014 to notify them of his intentions and then to resign from Hood Packaging on June 6, 2014.

44.    After telling Morris of his plan to resign on Friday, June 6, Steinwagner stated, "We need to discuss what to expect.  I would guess I will be asked to leave the building on Friday."

45.    At around the same time, Hood Packaging was working on a proposal to update the Agency Agreement with Morris Packaging. Steinwagner was part of preparing that proposal for Morris Packaging.

46.    On May 21, 2014, Steinwagner emailed a proposed agreement from Hood Packaging to Jim Morris.

47.    On May 27, 2014, Steinwagner used a non-Hood Packaging email account to transmit to Jim Morris a plan to obtain various business from Hood Packaging and to compete against Hood Packaging. Steinwagner sent Morris a detailed list of Hood Packaging's customers and prospects, including proprietary information regarding production and contract information.  Steinwagner tried to hide his wrongful conduct by using the email account "psteinwagner@hotmail.com" that lists "Penny Steinwagner" in the "From" field for emails sent from that account. Upon information and belief, Steinwagner's wife's name is Penny.  The email sign off was from "Brian." This plan was in competition with Hood Packaging and relied upon and disclosed Hood's confidential, proprietary, and trade-secret information.

48.    On May 30, 2014, Jim Morris forwarded the May 27 email to Steinwagner's Hood Packaging email account, stating that he could not open the attached document. Later that night, Steinwagner replied to Jim Morris from the

psteinwagner@hotmail.com email account: "Try this one. Don't send to work E-Mail like you just did."

49.    On June 1, 2014, Jim Morris flew to Wisconsin and met with Steinwagner.

50.    On June 2, 2014, Steinwagner emailed a Hood Packaging executive that, "I have been unable to get a response from Jim [Morris] on the agreement that you had me send over. Maybe it is time for you to call him." The email did not mention the in-person meeting Steinwagner had with Jim Morris the day before.

51.    Steinwagner's employment with Hood Packaging ended effective June 5, 2014 when he resigned from the company.

52.    Just prior to resigning from Hood Packaging, Steinwagner met with one or more Hood Packaging customers and, upon information and belief, did so with the purpose of obtaining information to provide to Morris Packaging and/or Morris Converting and to compete against Hood Packaging.

53.    Steinwagner's, Morris Packaging's, and Morris Converting's conduct was and is in furtherance of a scheme to obtain and convert to their use and gain Hood Packaging's records, trade secrets, confidential information, and manufacturing information and techniques and the goodwill generated, directly and indirectly, by Steinwagner's association with Hood Packaging.

54.    Steinwagner disclosed and provided Hood Packaging's confidential, proprietary, and trade-secret information to Morris Packaging and, on information and belief, to Morris Converting for purposes of competing against Hood while he was still

employed with Hood Packaging, in direct violation of his fiduciary and loyalty obligations to Hood Packaging and the terms of his Non-Compete Agreement.

55.    Hood packaging terminated the Agency Agreement on June 24, 2014.

56.    On information and belief, Steinwagner has competed against Hood Packaging in violation of his Non-Compete Agreement by visiting at least three Hood Packaging customers for purposes of competing against Hood Packaging and bringing that business to Morris Packaging and/or Morris Converting.  This competition has caused or will cause irreparable damage to Hood Packaging's reputation and good will, as well as monetary damages.

57.    On information and belief, Morris Packaging has competed against Hood Packaging in violation of its Agency Agreement by diverting business from Hood Packaging to competing companies, including but not limited to Morris Converting prior to the June 24, 2014 termination of the Agency Agreement.

58.    Hood Packaging has been damaged by Steinwagner's, Morris Packaging's, and Morris Converting's wrongful actions in an amount in excess of $75,000.

59.    The value of the trade secrets misappropriated by Steinwagner, Morris Packaging, and Morris Converting is in excess of $75,000.

## FIRST CAUSE OF ACTION

### (Breach of Contract against Steinwagner)

60.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

14

61.     Steinwagner entered into a valid and enforceable contract (the Non-Compete Agreement) with Hood Packaging on or around October 28, 2009.

62.     Hood Packaging performed all conditions precedent.

63.     Pursuant to that Non-Compete Agreement, Steinwagner had an obligation to refrain from using for himself or others any of Hood Packaging's trade secrets, confidential information, or other proprietary data.

64.     Steinwagner breached his contractual obligations by using for himself or others – including Morris Packaging and/or Morris Converting – Hood Packaging's trade secrets, confidential information, and other proprietary data.

65.     Pursuant to that Non-Compete Agreement, Steinwagner agreed not to compete against Hood Packaging for a period of one year in areas where Hood Packaging was actively conducting business during Steinwagner's employment.

66.     Steinwagner breached his contractual obligations by competing against Hood Packaging in direct contravention of his Non-Compete Agreement.

67.     Hood Packaging has suffered damages as a direct result of Steinwagner's breach of his contractual obligations.

68.     In addition, as a consequence of the foregoing, Hood Packaging will continue to suffer substantial damages and financial loss including but not limited to the loss of customers and customer good will as a result of Steinwagner's breaches.

## SECOND CAUSE OF ACTION

### (Misappropriation of Trade Secrets against Steinwagner)

69.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

70.    The confidential information of Hood Packaging to which Steinwagner has gained access, as described above, constitutes trade secrets within the meaning of the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01-08.

71.    Hood Packaging's confidential customer and internal operational information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

72.    Hood Packaging has made reasonable efforts to maintain the secrecy of such confidential customer and internal operational information.

73.    Steinwagner knew, or had reason to know, that he acquired Hood Packaging's trade secrets under circumstances giving rise to a duty for him to maintain the secrecy and limit the use of those trade secrets.

74.    Steinwagner did not have Hood Packaging's express or implied consent to disclose or use Hood Packaging's trade secrets.

75.    On information and belief, Steinwagner disclosed and used, and is continuing to disclose and use, Hood Packaging's trade secrets to sell to or solicit customers and prospect customers of Hood Packaging.

76.     Steinwagner's actions constitute misappropriation of Hood Packaging's trade secrets.

77.     Steinwagner's conduct in misappropriating Hood Packaging's trade secrets by improperly acquiring, using, and disclosing such trade secrets in breach of a duty to maintain the secrecy of such trade secrets was willful and malicious.

78.     As a result of Steinwagner's misappropriation of Hood Packaging's trade secrets, Hood Packaging has suffered damages.

79.     Steinwagner's misappropriation of Hood Packaging's trade secrets also entitles Hood Packaging to injunctive relief as provided by Minn. Stat. § 325C.02, to exemplary damages pursuant to Minn. Stat. § 325C.03, and to attorney fees pursuant to Minn. Stat. § 325C.04.

## THIRD CAUSE OF ACTION

### (Breach Of Fiduciary Duty against Steinwagner)

80.     Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

81.     Hood Packaging employed Steinwagner until he abruptly resigned on June 5, 2013.  Steinwagner was a key employee as the General Manager of Hood Packaging's North Region, responsible for sales in excess of $65 million a year.

82.     During Steinwagner's employment at Hood Packaging, Steinwagner collected and had access to documents containing confidential information and trade secrets pertaining to Hood Packaging's business practices, research, business operation, financial matters, customers, and prospective customers.

83.     Steinwagner signed the Non-Compete in which he acknowledged that he would not disclose non-public, confidential, or proprietary information or knowledge relating to Hood Packaging and any person, firm, or corporation that Hood Packaging has or had business relations with.

84.     In the Non-Compete Agreement, Steinwagner agreed to not compete with Hood Packaging during his term of employment and for one year after his resignation anywhere that Hood Packaging was actively conducting business as of the date of his resignation.

85.     Steinwagner agreed not to initiate contact with any employee of Hood Packaging, or any affiliate or subsidy, for the purpose of inducing or attempting to induce the employees to leave Hood Packaging for one year following the end of his employment with Hood Packaging.

86.     Steinwagner was trained on and aware of Hood Packaging policies related to protecting trade secrets and confidential information.

87.     Steinwagner knew and agreed that the information relating to Hood Packaging's business practices, research, business operations, financial matters, and customers was confidential and that he had a duty to maintain its confidentiality.

88.     Despite his fiduciary obligations to Hood Packaging to maintain Hood Packaging's trade secrets as confidential, Steinwagner nevertheless sent Hood Packaging trade secrets to Morris Packaging and Morris Converting, competing companies, and conspired with Morris Packaging to use that information to solicit customers and prospective customers of Hood Packaging.

89.    Steinwagner has violated his common law fiduciary duty in that, while employed by Hood Packaging, Steinwagner secretly planned to leave the employ of Hood Packaging and schemed to deprive Hood Packaging of its customers, trade secrets, and employees, removed Hood Packaging confidential materials, and then utilized Hood Packaging's confidential information and other resources to solicit or prepare to solicit Hood Packaging's customers and prospective customers.

90.    Steinwagner's actions constitute an unlawful breach of his fiduciary duty to Hood Packaging.

91.    As a result of Steinwagner's breach of his fiduciary duty to Hood Packaging, Hood Packaging has suffered damages.

## FOURTH CAUSE OF ACTION

### (Breach Of Duty Of Loyalty against Steinwagner)

92.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

93.    As an employee of Hood Packaging, Steinwagner owed Hood Packaging a duty of loyalty.  This duty included, among other things, a duty to refrain from competing with Hood Packaging while he was employed by Hood Packaging, from disclosing information that Hood Packaging considered and protected as confidential and trade secret, and from soliciting Hood Packaging's customers.

94.    Steinwagner breached his duty of loyalty to Hood Packaging when he misappropriated Hood Packaging's confidential, proprietary, and trade-secret information, including customer and prospective information, including the names of

those customers and prospective customers and the values associated with those accounts, and disclosed that information to Morris Packaging and Morris Converting prior to his resignation from Hood Packaging and taking Hood Packaging's information with him when he resigned.

95.    As a result of Steinwagner's breach of his duty of loyalty to Hood Packaging, Hood Packaging has suffered damages.

## FIFTH CAUSE OF ACTION

**(Tortious Interference with Business Expectancy against Steinwagner)**

96.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

97.    Hood Packaging has business expectancies with its customers and prospective customers in the areas where it is actively conducting business.

98.    Hood Packaging profits from these business expectancies by selling packaging and other services to these companies.

99.    Steinwagner knew of the business expectancies between Hood Packaging and its customers and prospective customers.

100.    Steinwagner intentionally interfered with these business expectancies by soliciting and causing a breach or termination of the business expectancies from Hood Packaging's customers and prospective customers.

101.    Steinwagner was not justified or privileged in interfering with the business expectancies between Hood Packaging and its customers and prospective customers.

102.    Steinwagner's intentional interference with the business expectancies between Hood Packaging's customers and prospective customers caused damage to Hood Packaging.

## SIXTH CAUSE OF ACTION

### (Conversion against Steinwagner)

103.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

104.    Steinwagner intentionally, wrongfully, and without Hood Packaging's authorization, removed Hood Packaging's property from its Arden Hills, Minnesota office, including but not limited to Hood Packaging's customer information, and confidential and proprietary information.

105.    Steinwagner converted this property for his own use in violation of Hood Packaging's property rights.

106.    Steinwagner converted this property for use on Morris Packaging's and Morris Converting's behalf and to Hood Packaging's detriment, in violation of Hood Packaging's property rights.

107.    As a result of said conversion, Hood Packaging has suffered damages.

## SEVENTH CAUSE OF ACTION

### (Uniform Deceptive Trade Practices Act against Steinwagner)

108.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

109.     Steinwagner willfully caused the likelihood of confusion or of misunderstanding as to affiliation, connection, or association with Hood Packaging by soliciting Hood Packaging's customers and prospective customers for a competitor company while still employed at Hood Packaging pursuant to Minn. Stat. § 325D.44, subd. 1.

110.     Steinwagner knew his actions were deceptive.

111.     Steinwagner's deceptive trade practices caused injury to Hood Packaging.

**EIGHTH CAUSE OF ACTION**

**(Unjust Enrichment against Steinwagner, Morris Packaging, and Morris Converting)**

112.     Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

113.     Steinwagner solicited Hood Packaging's customers and prospective customers for Morris Packaging and/or Morris Converting during his employment with Hood Packaging and, after his resignation, using Hood Packaging's confidential, proprietary, and trade secret information.

114.     Steinwagner, Morris Packaging, and Morris Converting have received a benefit from Hood Packaging based on their conduct and under circumstances that make it inequitable for them to retain the benefit without paying for it.

115.     Steinwagner's, Morris Packaging's, and Morris Converting's retention of the benefit without paying for it constitutes unjust enrichment.

## NINTH CAUSE OF ACTION

### (Permanent Injunction against Steinwagner)

116.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

117.    Hood Packaging will be irreparably harmed should Steinwagner continue to breach the Non-Compete Agreement. Hood Packaging will be further irreparably harmed should Steinwagner continue to misappropriate Hood Packaging's trade secrets.

118.    The remedy of damages is not fully adequate in this action.

119.    Steinwagner should be permanently enjoined from breaching the Non-Compete Agreement, misappropriating Hood Packaging's trade secrets, and otherwise violating the terms of his employment contract.

## TENTH CAUSE OF ACTION

### (Breach of Contract against Morris Packaging)

120.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

121.    Morris Packaging entered into a valid and enforceable contract (the Agency Agreement) with Hood Packaging effective December 9, 2004.

122.    Hood Packaging performed all conditions precedent.

123.    Pursuant to the Agency Agreement, Morris Packaging had an obligation to use its best efforts to pursue business and orders from customers for Hood Packaging and to not pursue orders for products that are competitive to the products offered by Hood Packaging.

124.    Pursuant to the Agency Agreement, Morris Packaging also agreed not to divulge any of Hood Packaging's confidential information or to make use of such information in a competing enterprise during or after the term of the Agency Agreement.

125.    Morris Packaging breached its contractual obligations by diverting business from Hood Packaging.

126.    Morris Packaging breached its contractual obligations by using Hood Packaging's trade secrets, confidential information, and other proprietary data in a competing enterprise.

127.    Hood Packaging has suffered damages as a direct result of Morris Packaging's breach of its contractual obligations.

128.    In addition, as a consequence of the foregoing, Hood Packaging will continue to suffer substantial damages and financial loss including but not limited to the loss of customers and customer good will as a result of Morris Packaging's breaches.

## ELEVENTH CAUSE OF ACTION

### (Breach of the Duty of Good Faith and Fair Dealings against Morris Packaging)

129.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

130.    Hood Packaging and Morris Packaging were parties to the Agency Agreement.

131.    Hood Packaging performed the conditions precedent and other obligations as required under the Agency Agreement.

132.    The duty of good faith and fair dealings is inferred into contracts in Minnesota.

133.    Morris Packaging breached the duty of good faith and fair dealing in several ways, including but not limited to: conspiring with Steinwagner during his employment at Hood Packaging to compete with Hood Packaging and take business from Hood Packaging, and using Hood Packaging's confidential, proprietary, and trade secret information to set up a competing company.

134.    Morris Packaging's breach of the duty of good faith and fair dealing under the Agency Agreement has damaged Hood Packaging.

135.    Hood Packaging is entitled to recover its damages for the breach of the duty of good faith and fair dealings by Morris Packaging.

## TWELFTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets against Morris Packaging and Morris Converting)

136.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

137.    The confidential information of Hood Packaging that Morris Packaging and Morris Converting gained access, as described above, constituted trade secrets within the meaning of the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01-08.

138.    Hood Packaging's confidential customer and internal operational information derives independent economic value from not being generally known to, and

not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

139.   Hood Packaging has made reasonable efforts to maintain the secrecy of such confidential customer and internal operational information.

140.   Morris Packaging and Morris Converting knew, or had reason to know, that they acquired Hood Packaging's trade secrets under circumstances giving rise to a duty for it to maintain the secrecy and limit the use of those trade secrets.

141.   Morris Packaging and Morris Converting did not have Hood Packaging's express or implied consent to disclose or use Hood Packaging's trade secrets.

142.   On information and belief, Morris Packaging and Morris Converting disclosed and used, and is continuing to disclose and use, Hood Packaging's trade secrets to sell to or solicit customers and prospect customers of Hood Packaging.

143.   Morris   Packaging   and   Morris   Converting's   actions   constitute misappropriation of Hood Packaging's trade secrets.

144.   Morris Packaging and Morris Converting's conduct in misappropriating Hood Packaging's trade secrets by improperly acquiring, using, and disclosing such trade secrets in breach of a duty to maintain the secrecy of such trade secrets was willful and malicious.

145.   As a result of Morris Packaging and Morris Converting's misappropriation of Hood Packaging's trade secrets, Hood Packaging has suffered damages.

146.   Morris Packaging and Morris Converting's misappropriation of Hood Packaging's trade secrets also entitles Hood Packaging to injunctive relief as provided by

Minn. Stat. § 325C.02, to exemplary damages pursuant to Minn. Stat. § 325C.03, and to attorney fees pursuant to Minn. Stat. § 325C.04.

## THIRTEENTH CAUSE OF ACTION

### (Tortious Interference with Business Expectancy against Morris Packaging and Morris Converting)

147.   Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

148.   Hood Packaging has business expectancies with its customers and prospective customers in the areas where it is actively conducting business.

149.   Hood Packaging profits from these business expectancies by selling packaging and other services to these companies.

150.   Morris Packaging and Morris Converting knew of the business expectancies between Hood Packaging and its customers and prospective customers.

151.   Morris Packaging and Morris Converting intentionally interfered with these business expectancies by soliciting and causing a breach or termination of the business expectancies from Hood Packaging's customers and prospective customers.

152.   Morris Packaging and Morris Converting were not justified or privileged in interfering with the business expectancies between Hood Packaging and its customers and prospective customers.

153.   Morris Packaging's and Morris Converting's intentional interference with the business expectancies between Hood Packaging's customers and prospective customers caused damage to Hood Packaging.

## FOURTEENTH CAUSE OF ACTION

## (Tortious Interference with Contract against Morris Packaging)

154.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

155.    Morris Packaging knew of the Non-Compete Agreement between Steinwagner and Hood Packaging, and further knew the specific terms of that contract, including those terms setting forth the confidentiality agreement and non-compete agreement.

156.    Morris Packaging intentionally interfered with the contractual relationship between Steinwagner and Hood Packaging and further intentionally caused Steinwagner to breach his contract with Hood Packaging by having Steinwagner assemble a list of target customers to compete with Hood Packaging while Steinwagner was still employed at Hood Packaging and by having Steinwagner solicit Hood Packaging customers within one year of his resignation in violation of Steinwagner's non-compete provision.

157.    Morris Packaging was not justified in interfering with the contractual relationship between Hood Packaging and Steinwagner.

158.    Morris Packaging's intentional interference with the contractual relationship between Hood Packaging and Steinwagner caused damage to Hood Packaging.

## FIFTEENTH CAUSE OF ACTION

## (Unfair Competition against All Defendants)

159.   Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

160.   The acts and conduct of Defendants as alleged in this Amended Complaint constitute unfair competition pursuant to the common law of the State of Minnesota.

161.   Defendants' acts and conduct as alleged above have damaged and will continue to damage Hood Packaging and have resulted in an illicit gain of profit to Defendants in an amount that is unknown at the present time.

## SIXTEENTH CAUSE OF ACTION

### (Civil Conspiracy – All Defendants)

162.   Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

163.   Defendants were engaged in a civil conspiracy to accomplish some concerted actions that injured Hood Packaging.

164.   Defendants committed and executed certain acts in pursuance of certain torts as alleged in this Amended Complaint.

165.   That as a result of Defendants misappropriation of trade secrets, tortious interference with business expectancy, tortious interference with contract, unjust enrichment, and other torts alleged in this Amended Compliant, Defendants conspired and agreed to commit such acts.

166.   Defendants' conspiracy caused damage to Hood Packaging.

## SEVENTEENTH CAUSE OF ACTION

### (Permanent Injunction against Morris Packaging and Morris Converting)

167.    Hood Packaging re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

168.    Hood Packaging will be irreparably harmed should Morris Packaging continue to breach the confidentiality provision of the Agency Agreement. Hood Packaging will be further irreparably harmed should Morris Packaging and Morris Converting continue to misappropriate Hood Packaging's trade secrets.

169.    The remedy of damages is not fully adequate in this action.

170.    Morris Packaging should be permanently enjoined from breaching the Agency Agreement, misappropriating Hood Packaging's trade secrets, and otherwise violating the terms of the Agency Agreement.

171.    Morris Converting should be permanently enjoined from misappropriating Hood Packaging's trade secrets.

**WHEREFORE**, Plaintiff prays for recovery from Defendants Brian Steinwagner, Morris Packaging, and Morris Converting as follows:

1.    Judgment against Defendants on all counts;

2.    Damages, including all damages allowed by law, punitive damages, and attorneys' fees, in an amount to be determined at trial;

3.    An Order enjoining Steinwagner from breaching his Non-Compete Agreement with Hood Packaging, including but not limited to covenants not to compete and nondisclosure provisions;

4.      An Order enjoining Steinwagner, Morris Packaging, and Morris Converting from misappropriating Hood Packaging's trade secrets;

5.      An Accounting of all of Steinwagner's, Morris Packaging's, and Morris Converting's non-Hood related business activities between January 1, 2012 and the date of trial in this matter; and

6.      For such other relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all the issues so triable.

Dated:  December 5, 2014                     /s/ John E. Radmer
                                             Mary M.L. O'Brien (#177404)
                                             John E. Radmer (#0386973)
                                             George H. Norris (#0391475)
                                             MEAGHER & GEER, P.L.L.P.
                                             33 South Sixth Street, Suite 4400
                                             Minneapolis, Minnesota 55402
                                             Tel:    612-338-0661

                                             *Counsel for Plaintiff Hood Packaging,
                                             Corp.*

9960161